Vincent W. ECKEL, Plaintiff,

v.

David L. LADD, Commissioner of Patents,
Defendant.

Civ. A. No. 153–63.

United States District Court
District of Columbia.

Oct. 5, 1964.

Ellsworth H. Mosher, Stevens, Davis, Miller & Mosher, Washington, D. C., Elwood S. Kendrick, Kendrick & Stolzy, Los Angeles, Cal., for plaintiff.

Clarence W. Moore, Solicitor, Washington, D. C., for defendant.

JACKSON, District Judge.

This is an action under Section 145, Title 35 of the United States Code in which the plaintiff, Vincent W. Eckel, seeks to have the Court authorize the defendant, Commissioner of Patents, to issue Letters Patent of the United States containing Claims 1 through 16 of his application, Serial No. 661,837, filed in the Patent Office on May 27, 1957, entitled "Solenoid Operated Acuator and Valve."

The invention described in the application is directed to a valve and an electromagnetic device for operating it. The device includes a coil which creates magnetic flux when energized, a housing which surrounds the coil and is made of magnetizable material, a pair of pole portions on the housing which extend into each end of the coil, a movable armature mounted within one of the pole portions and attracted by the other pole portion when the coil is energized, and a sleeve of non-magnetizable material disposed between the adjacent ends of the opposing pole portions. The armature is provided with an end portion which serves as a valve member adapted to seat on a cooperating valve member mounted on the casing.

The tribunals of the Patent Office denied the plaintiff's patent in a decision based upon the language of 35 U.S.C. § 103, which prohibits patent protection " * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains". In support of this decision the Patent Office relied upon a French patent to Gachon, No. 876,454, a Swiss patent to Bosch, No. 93,102, a German patent to Henrich, No. 662,027, and United States patents to Fuscaldo, No. 2,297,399, and to Hammond, No. 2,420,241. Only the Gachon and Fuscaldo patents were material to the issues developed at trial.

The Gachon patent, dated August 3, 1942, discloses the following construction: an electromagnetically operated valve having a coil, a casing surrounding the coil with annular portions extending into each end of the coil, an annular sleeve of T-shaped cross-section positioned between the inner ends of the annular casing portions, a movable core (or armature) mounted within one of the annular portions, and a stationary member mounted on the other annular portion to serve as a stop. The drawing of the patent also shows a line, stated in the specification to represent a magnetic circuit, which passes through the casing, one of the annular portions, the stop member mounted thereon, the movable core, and the other annular portion. The line does

not pass through either the valve seat or the T-shaped annular sleeve.

The Fuscaldo patent, granted September 29, 1942, is directed to a fuel injector for internal combustion engines having an electromagnetic device for operating a valve. The device includes a coil enclosed within a sectional casing of magnetizable material, a portion of an end casing member which extends within the coil, a sleeve of non-magnetizable material between that portion and another end casing member, a movable armature having a close sliding fit with the latter end casing member, and a stop member of magnetizable material mounted on the first end casing member. The armature is attached to a valve stem by a non-magnetizable hub, and the valve is located a substantial distance from the coil.

It was generally admitted at trial that the components of the Gachon device and the manner in which they were assembled was highly similar to the subject matter plaintiff claimed as his invention. The plaintiff's principal effort was to establish that his device was constructed of different *materials* than that of Gachon. The Patent Office contended the materials of both devices were the same.

The language of the Gachon patent did not state whether either the valve casing or the annular T-shaped sleeve shown by its drawings was made of magnetizable or non-magnetizable material. The plaintiff's claims required that the casing be of magnetizable material, and that the sleeve be of non-magnetizable material.

Expert testimony was introduced by the plaintiff which sought to establish that the purpose of the Gachon device would have been frustrated had the casing been made of magnetizable material. Essential to the rationale of this testimony was the assertion that a "second air gap" would thus be created between Gachon's movable core and the casing within which the core was mounted. This gap, it was said, would counteract the desired effect of the "working" air gap, and would occur between the outer end of the movable core and the outer region of the annular portion of the casing, which was utilized by Gachon for a valve seat.

This rationale, in the Court's opinion, was effectively rebutted by the Patent Office's demonstration that the line representing Gachon's magnetic circuit passed directly through the portion of his casing asserted to be non-magnetic by the plaintiff, but not through the space between the core and the valve seat plaintiff asserted to be the "second air gap". This proved to the Court's satisfaction, when taken with other evidence tending to show that lines representing magnetic circuits usually are assumed to pass through magnetizable material, that the Patent Office had a sound basis for concluding that due to the valve seat's position, the Gachon device was operable with a magnetizable casing.

Similarly, provision of a non-magnetizable sleeve within the core of a coil was shown by the Fuscaldo patent to be a conventional method for concentrating magnetic force upon a "working" air gap. To assert that the annular sleeve of Gachon, identically positioned, was not used for the same purpose is to completely ignore its existence in the drawing. No other reason was advanced for its presence, and no other reason seems plausible. It must be concluded that although the language of the patent does not expressly say so, Gachon's sleeve of T-shaped cross-section was made of non-magnetizable material.

With the above interpretation of the Gachon patent, it appears to the Court that the plaintiff's structure is completely disclosed. Manifestly, the Court cannot say that plaintiff's subject matter would have been unobvious in view of Gachon and Fuscaldo to a person skilled in the art to which all of these disclosures pertain.

The other principal contention advanced by the plaintiff was that his device satisfied a long-felt want in the aircraft and space industry for lightweight valves. Although significant evidence was presented upon this point, the Court does not deem it sufficient to overcome what it considers to be a clear disclosure

of the claimed subject matter by the prior art.

Accordingly, the Court finds for the defendant, against the plaintiff, and will dismiss the Complaint.

The above Opinion contains Findings of Fact and Conclusions of Law.